UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

VALERIE L. G.,                                                    Case No. 6:24-cv-01892-AR

                Plaintiff,                                     OPINION AND ORDER

    v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

                Defendant.

_____

**ARMISTEAD, United States Magistrate Judge**

      In this judicial review of the Commissioner's final decision denying Social Security

benefits, Valerie L. G. (last name omitted for privacy) challenges the Administrative Law Judge's

findings regarding her subjective symptom testimony and the medical opinion of Dr. Gina Miller.

(Pl.'s Br. at 15-18.) As explained below, the Commissioner's decision is REVERSED, and this case is REMANDED for further proceedings.[1]

## PROCEDURAL BACKGROUND

Plaintiff applied for Title II Disability Insurance Benefits (DIB) in April 2021, alleging disability onset as of June 23, 2020. (Tr. 10.) Her application was denied, and plaintiff requested, and was granted, a hearing before an ALJ. (Tr. 48-69.) On November 24, 2023, the ALJ issued a decision finding plaintiff was not disabled. (Tr. 25.) Plaintiff requested review of the hearing decision, which the Appeals Council denied in September 2024. (Tr. 173-74, 1-6.) Plaintiff now seeks review of that decision.

## ALJ'S DECISION

In denying plaintiff's application for DIB, the ALJ followed the five-step sequential evaluation process.[2] At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity (SGA) since June 2020, the alleged onset date. (Tr. 13.) At step two, the ALJ determined that plaintiff had the following severe impairments: breast cancer in remission, cervical fracture with spinal fusion, closed non-displaced fracture of the fifth metatarsal bone of the right foot, and closed fracture of multiple ribs of the left side. (Tr. 13.) At step three, the ALJ

---

[1]    This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3), and all parties have consented to jurisdiction by magistrate judge under Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c).

[2]    To determine a claimant's disability, the ALJ must apply a five-step evaluation. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the ALJ finds that a claimant is either disabled or not disabled at any step, the ALJ does not continue to the next step. *Id*.; *see also Parra v. Astrue*, 481 F.3d 742, 746-47 (9th Cir. 2007) (discussing the five-step evaluation in detail).

determined that plaintiff's impairments, singly or in combination, did not meet or medically

equal the severity of any listed impairment. (Tr. 16.) As for the ALJ's assessment of plaintiff's

residual functional capacity (RFC), 20 C.F.R. § 404.1545, the ALJ determined that she had the

ability to perform light work with these added limitations:

> Occasionally push or pull with both arms; occasionally climb ramps or stairs;
> never climb ladders, ropes, or scaffolds; occasionally balance, stoop, crouch,
> kneel, or crawl; occasionally reach overhead with both arms; occasional exposure
> to moving, mechanical parts; occasionally operating a motor vehicle; occasional
> exposure to unprotected heights; and able to perform routine and repetitive tasks
> (Tr. 17.)

At step four, the ALJ determined that plaintiff cannot perform her past relevant work.

(Tr. 23.) Considering plaintiff's RFC, the ALJ found at step five that jobs existed in significant

numbers in the national economy that plaintiff could perform, including such representative

occupations as routing clerk, office helper, and laundry worker. (Tr. 24.)

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied

proper legal standards and the findings are supported by substantial evidence in the record. 42

U.S.C. § 405(g); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). Substantial evidence is "more

than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quotation and

citation omitted). To determine whether substantial evidence exists, the court must weigh all the

evidence, whether it supports or detracts from the Commissioner's decision. *Garrison v. Colvin*,

759 F.3d 995, 1009 (9th Cir. 2014).

## DISCUSSION

A.    ***Subjective Symptom Testimony***

Determining the credibility of a claimant's symptom testimony requires the ALJ to undertake a two-step process of analysis. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017); 20 C.F.R. § 404.1529. At the first step, the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the alleged symptoms. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second step, if there is no affirmative evidence of malingering, the ALJ must provide specific, clear and convincing reasons for discounting the claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015); 20 C.F.R. § 404.1529. The specific, clear and convincing standard is "the most demanding required in Social Security cases" and is "not an easy requirement to meet." *Garrison*, 759 F.3d at 1015*; Trevizo*, 871 F.3d at 678-79. The "clear and convincing" standard requires an ALJ to "show [their] work" but, ultimately, the question is not whether ALJ's rationale convinces the court, but whether the ALJ's rationale "is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

Plaintiff argues that the ALJ failed to give specific, clear and convincing reasons for discounting her subjective symptom testimony. (Pl.'s Br. at 3-15.) Specifically, plaintiff contends that the ALJ failed to consider her allegations in light of her migraines, miscited the record, and mischaracterized her improvement with treatment. Plaintiff is correct.

1.        **Inconsistency with Objective Medical Evidence**

The ALJ improperly discounted plaintiff's testimony about the limiting effects of her physical health impairments. (Tr. 17-20.) The ALJ summarized parts of the medical record, attempting to show inconsistency between the record and plaintiff's testimony about her migraine headaches. (Tr. 18-20.) Although an ALJ may use "inconsistent objective medical evidence in the record to discount subjective symptom testimony," the ALJ "cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence fully corroborating every allegation within the subjective testimony." *Smartt,* 53 F.4th at 498 (emphasis added) (citation modified); *see Coleman v. Saul*, 979 F.3d 751, 756 (9th Cir. 2020) ("An ALJ, however, may not discredit the claimant's subjective complaints solely because the objective evidence fails to fully corroborate the degree of pain alleged."). Therefore, the ALJ must provide specific, clear, and convincing reasons, backed by substantial evidence, to explain why the medical evidence is inconsistent with the claimant's subjective symptom testimony. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-38, 1040 (9th Cir. 2007).

Here, the ALJ failed to do so in two ways. First, the ALJ provided a summary of medical evidence she found undermined plaintiff's claims of impairment but focused on the evidence supporting her conclusion even when evidence to the contrary appears throughout the record. An ALJ may not "cherry pick" evidence without considering its context in the record. *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (holding ALJ may not "cherry pick" evidence that disfavors disability without considering its context in record); *Garrison v. Colvin*, 759 F.3d 995, 1017 n.23 (9th Cir. 2014) (ALJ may not "cherry-pick" from mixed results to support a denial). Second, the ALJ miscited various parts of the medical record, failed to properly explain such

Page 5 – OPINION AND ORDER
*Valerie L. G. v. Comm'r Soc. Sec. Admin.*, 6:24-cv-01892-AR

citations, thus indicating a lack of substantial evidence supporting her reasoning. *See Treichler,* 775 F.3d at 1103 ("Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the reviewing court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence.").

*Headaches.* The ALJ acknowledged plaintiff's testimony about her headaches that prevent her from working. (Tr. 17-18.) To undermine this testimony, the ALJ relied on an instance where plaintiff "denied headaches" and another where she had "no neurological compromise." (Tr. 19-20, citing Tr. 1303-09, 1807-13.) But reliance on those two instances does not demonstrate a meaningful review of the record.

That is because the ALJ identified a report where plaintiff denied headaches and a treatment note indicating no "neurological compromise" without considering many instances in the record discussing her headaches and why they were frequent and severe. (*Compare* Tr. 1303-09, 1807-13 *with* Tr. 2011 "[plaintiff]'s symptoms are tight muscles, migraines" stemming from "fractured vertebrae[]s in neck/neck fusion"; *see also* Tr. 1793-94, 1327 "Headaches could have [a] neurological cause as well," 1444 "She has struggled with tension headaches and limited functional use following fusion," 1474, 1798.)[3] Indeed, about the same time period plaintiff's

---

[3]    The ALJ discussed plaintiff's headaches in slightly more detail at step two of the sequential process, after determining they were not severe, but even then miscited sections of the record and failed to provide substantial evidence to counter plaintiff's testimony.

For example, the ALJ cited a treatment note showing plaintiff as "neurologically intact[,]" and that her only diagnosis was for depression, which is a mischaracterization of the record. (Tr. 13, citing Tr. 1511-13.) Plaintiff was diagnosed with headaches, along with many other impairments, by her treating provider and was prescribed medication. (Tr. 1511.) The treatment note does not state that plaintiff was "neurologically intact," as the ALJ asserts, but that

providers documented that her headaches are likely due to "musculoskeletal tension from [history] of [Traumatic Brain Injury] and cervical fracture" and they also noted that "the[ir] frequency is increasing." (Tr. 1791, 1794.) The ALJ improperly cherry-picked the two treatment notes without considering the full medical record. *See Ghanim*, 763 F.3d at 1154, 1164.

### 2. Improvement with Treatment

The ALJ also relied on records showing plaintiff's symptoms improved with treatment when concluding that her symptom testimony overstated her limitations. (Tr. 19-20.) An ALJ may reject a claimant's symptom testimony if that testimony is contradicted by evidence in the medical record. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). If the record shows a claimant's symptoms have improved with treatment, that improvement is "an important indicator of the intensity and persistence of . . . symptoms." 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) (noting "evidence of medical treatment successfully relieving symptoms can undermine a claim of disability"). Symptom improvement, however, must be weighed within the context of an "overall diagnostic picture." *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001).

The ALJ again failed to provide clear and convincing reasons to discount plaintiff's symptom testimony when she concluded that her allegations of headaches improved with treatment. Even though evidence that treatment improves a claimant's symptoms can be a clear and convincing reason for discounting a plaintiff's symptom testimony, *Wellington*, 878 F.3d at

---

she was observed on exam to have a "[c]ranial nerve deficit (Left V3 with facial droop, tongue deviates slightly right and facial asymmetry present)" and positive Romberg sign, as well as "[d]ecreased range of motion (in all directions)" in her cervical back. (Tr. 1513-15.)

876, an ALJ must view it in context, "with an understanding of the patient's overall well-being and the nature of her symptoms," *Attmore v. Colvin*, 827 F.3d 872, 877 (9th Cir. 2016). The ALJ's characterization of the record is incorrect as to what is effective in relieving plaintiff's headache symptoms. (Tr. 19-20.)

The ALJ cited treatment notes indicating that sleeping and medication made her headaches "tolerable." (Tr. 19, citing Tr. 832-34.) The ALJ also points out that plaintiff's "migraines, along with pain in her right foot" are managed with muscle relievers. (Tr. 20, citing Tr. 2011.) But those two instances do not reflect the broader picture of plaintiff's headache symptoms. *See Garrison*, 759 F.3d at 1018 ("While ALJs obviously must rely on examples to show why they do not believe that a claimant is credible, the data points they choose must in fact constitute examples of a broader development to satisfy the applicable 'clear and convincing' standard."). Records reveal that plaintiff's headaches are unique because they are triggered by her musculoskeletal impairments. After a motor vehicle accident caused fractures in plaintiff's vertebrae, plaintiff needed posterior cervical fusion surgery to her upper back and neck. (Tr. 563, 936.) Ever since the accident and subsequent surgery, her muscles are reportedly "tight" and her neck is "stiff[,]" so if plaintiff engages in movements that disturb those areas, she gets a headache. (Tr. 52-54, 218-19, 239, 1455, 1489, 1804, 2011, 2013.)

The ALJ's finding that plaintiff's headaches have improved with treatment is not fully supported. Three months after plaintiff stated that sleeping and medication made her headaches "tolerable[,]" plaintiff presented to her primary care provider "complaining of headaches," three to four times per week, her provider noted that their "frequency is increasing," and that ibuprofen and Tylenol "only take the edge off and her pain persists." (Tr. 19, 1327-29.) Plaintiff was then

prescribed Cyclobenzaprine, with her provider warning that "these will likely make her sleepy." (Tr. 1327, 1791.) In March 2022, her treatment provider observed that plaintiff presented as "[p]ositive for headaches and memory loss[,]" as well as "[p]ositive for sleep disturbance" due to headaches. (Tr. 1804.)

In sum, the record reflects that plaintiff's headaches are at the very least still present, and potentially worsening. (Tr. 19-20.) Thus, improvement with treatment does not rise to the level of a clear and convincing reason, supported by substantial evidence, for the ALJ to reject plaintiff's symptom claims in their entirety. This is particularly true because one of the only solutions to relieve her symptoms is sleep, which would greatly affect her ability to work full-time. (*See* Tr. 60-61 (plaintiff explaining that sleeping or laying down prevents a headache from starting), 65 (VE explaining during plaintiff's hearing that absences from work four times a month and being off-task twenty percent of the day would preclude full-time employment).) On remand, the ALJ must reconsider plaintiff's symptom claims, particularly as they pertain to how upper extremity movements trigger her migraine headaches.

**B.    *Medical Opinion Evidence***

Plaintiff challenges the ALJ's finding that the medical opinion of Gina Miller, M.D. was unpersuasive. The ALJ explained that,

> while Dr. Miller's opinion is supported in the sense that there are considerable treatment notes in the record from Dr. Miller, the findings suggesting [plaintiff] must be restricted to under five lbs. is not supported by the evidence, or Dr. Miller's own treatment notes, which document intact strength in the extremities, and increased tolerance for activities.

(Tr. 21, citing Tr. 1490, 1493, 1445.) In plaintiff's view, the ALJ's consideration of Dr. Miller's assessment—which was limited to the five-pound lifting restriction—lacked an evaluation of the

supportability or consistency as to Dr. Miller's opinion of plaintiff's other limitations, including "no overhead motions or looking up, no prolonge[d] seating or computer work, no large equipment use, [and needs] frequent breaks," all of which would affect her ability to work. (Pl.'s Br. at 16 (citing Tr. 2008.) The court agrees with plaintiff.

The regulations require ALJs to evaluate the supportability and consistency of a medical opinion when assessing its persuasiveness. 20 C.F.R. § 404.1520c. ALJs must "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(b)(2)). Supportability is determined by assessing whether the medical source provides explanations and objective medical evidence to support their opinion. 20 C.F.R. § 404.1520c(c)(1). Consistency is determined by evaluating how consistent the opinion is with evidence from other medical and nonmedical sources in the record. 20 C.F.R. § 404.1520c(c)(2).

Because the ALJ addressed only the five-pound lifting restriction, the court is left to guess as to the rest of Dr. Miller's opinion the ALJ thought to be supported or unsupported by the record, as Dr. Miller opined on many other aspects of plaintiff's impairments, not just lifting. (*See* Tr. 2008 (Dr. Miller also noting that plaintiff's imbalance and weakness may result in unsafe working conditions, and that she has "cognitive deficits secondary to [Traumatic Brain Injury] result[ing] in poor working memory[.]") And the ALJ's assertion that Dr. Miller's opinion is not supported by the record or her own treatment notes is not supported by substantial evidence. A review of the record shows that the ALJ impermissibly cherry-picked from Dr. Miller's examination notes. *See Ghanim*, 763 F.3d at 1154, 1164. Despite the ALJ's assertion that plaintiff

had "intact strength in the extremities[,]" those same notes also show that on exam plaintiff had

some "diastasis of her paraspinal muscles[,]" that her "cervical motion remains quite limited"

with "[l]imited [upper extremity] strength" and "[l]imited ADL tolerance." (Tr. 21, citing Tr.

1445, 1490.) In turn, the ALJ focused on the physical examination findings that support

plaintiff's slight improvement in her upper extremity strength to the exclusion of other relevant

information in the diagnostic record. *See Ghanim*, 763 F.3d at 1161-62 (when evaluating medical

opinions, ALJ must consider the context of the overall diagnostic picture). The ALJ thus erred in

her evaluation of the supportability factor.

As for consistency, the ALJ failed to adequately consider it as 20 C.F.R. §

404.1520c(c)(2) requires. Here, the ALJ took issue with some of plaintiff's physicians'

"statements suggesting physical restrictions[,]" pointing to plaintiff's neurosurgeon who

restricted plaintiff to lifting no more than five pounds, and eventually no more than 20. (Tr. 21,

citing Tr. 430, 835, 1489, 1914.) The ALJ then compared those treatment notes to Dr. Miller's

opinion that plaintiff should not lift more than five pounds. *(Id.,* citing Tr. 2008.) The ALJ

concluded that although those restrictions are "supported by treatment notes of the [plaintiff],"

they are "not consistent with those same treatment notes, which document improvement in

[plaintiff's] functioning with treatment such as physical therapy." *(Id.,* citing Tr. 1440-1503.)

There are two problems with this assessment.

First, the ALJ cites an entire section of the record that contains many pages and multiple

medical visits from which the court cannot discern what specific evidence supports the ALJ's

conclusion. *See Brown-Hunter*, 806 F.3d at 487, 492 ("[A]lthough we will not fault the agency

merely for explaining its decision with less than ideal clarity, we still demand that the agency set

forth the reasoning behind its decisions in a way that allows for meaningful review."). Because the ALJ does not identify specific parts of the record to justify her conclusion regarding the consistency of Dr. Miller's opinion, it is not supported by substantial evidence. Second, the ALJ's assessment of the consistency of Dr. Miller's opinion is incomplete, as she failed to compare Dr. Miller's motion, looking, seating, and break restrictions with other record evidence. Dr. Miller did not only restrict plaintiff to lifting no more than five pounds, but she also stated that plaintiff's imbalance and weakness would "result in unsafe working conditions, cognitive deficits secondary to [Traumatic Brain Injury] result[ing] in poor working memory" and "no overhead motions or looking up, no prolonge[d] seating or computer work, no large equipment use, frequent breaks[.]" (Tr. 2008.) Those restrictions all bear on plaintiff's capacity to work full-time, yet the ALJ did not meaningfully compare these restrictions with other record evidence. Again, the ALJ only took issue with plaintiff's five-pound lifting restriction and focused on the physical examination findings that support plaintiff's slight improvement in her upper extremity strength to the exclusion of other relevant information in the diagnostic record. The reasoning offered by the ALJ for the court's review is incomplete, rendering effective review impossible. Again, this favors remand. On remand, the ALJ should address the consistency factor as required by 20 C.F.R. § 416.920c(c)(2) and Ninth Circuit case law and incorporate any necessary changes into the RFC.

**C.** *Remedy*

A reviewing court has discretion to remand an action for further proceedings or for a finding of disability and an award of benefits. *See, e.g.*, *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014). Whether an action is remanded for an award of benefits or for further

proceedings depends on the likely utility of additional proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). In determining whether an award of benefits is warranted, the court conducts the "three-part credit-as-true" analysis. *Garrison*, 759 F.3d at 1020. Under that analysis, the court considers whether: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed and further proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Even if all the requisites are met, however, the court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Remand for further administrative proceedings is needed here. The ALJ failed to properly consider the extent to which plaintiff's symptoms limit her ability to work; concluded, absent adequate explanation, that Dr. Miller's medical opinion was unsupported by the record (*See* Tr. 21); did not discuss the consistency of Dr. Miller's opinion with other medical opinions or relevant medical evidence in the record, indicating reversible error (*See* Tr. 21); and discounted plaintiff's symptom testimony because of inconsistency with objective medical evidence and improvement with treatment despite the record showing that any improvement in plaintiff's symptoms was fleeting or mischaracterized by the ALJ. Moreover, the ALJ did not properly consider the entire record, cherry-picked examples of plaintiff's "improvement" or normal functionality and erroneously concluded that her symptoms were less limiting than alleged. (*See* Tr. 19-20.) Those errors may have affected the remaining steps and issues concerning the ultimate determination of plaintiff's disability remain unresolved. *Taylor v. Berryhill*, 720 F.

App'x 906, 907 (9th Cir. 2018) ("Remand for further proceedings is proper because outstanding issues in the record remain that must be resolved before a determination of disability can be made[.]"). The errors here are not "inconsequential to the ultimate nondisability determination." *Treichler*, 775 F.3d at 1099.

On remand, the ALJ will reevaluate plaintiff's alleged symptoms and incorporate that testimony into the RFC, or provide with clear and convincing reasons why that testimony is rejected. The ALJ will also reevaluate Dr. Miller's medical opinion and incorporate it into the RFC, or provide substantial evidence with an explanation to why she rejected that opinion. As warranted, the ALJ will reevaluate plaintiff's RFC, obtain any supplemental VE evidence, and conduct any other reasonable measures necessary. *Garrison*, 759 F.3d at 1019 (stating that remand is appropriate where "additional proceedings can remedy defects in the original administrative proceeding").

## CONCLUSION

For the above reasons, the court REVERSES the Commissioner's final decision and REMANDS this case for further administrative proceedings.

ORDERED: October 9, 2025

_____
JEFF ARMISTEAD
United States Magistrate Judge